SARAH A. DOW, APPELLEE, V. LULU HUTTON GOTCH, APPELLANT.

FILED DECEMBER 31, 1924.   No. 24343.

1. **Contracts: VALIDITY.** In order to be valid and enforceable, a contract in restraint of trade, if unlimited as to time, must be limited as to space, and the conditions thereof must appear to be reasonable.

2. ————: ————. *Held*, in this case, that the contract was fairly entered into and that its conditions are reasonable, and, hence, though limited as to space and unlimited as to time, it is valid and enforceable.

APPEAL from the district court for Hall county: BAYARD H. PAINE, JUDGE. *Affirmed.*

*Horth, Cleary & Suhr*, for appellant.

*B. J. Cunningham* and *Prince & Prince*, contra.

Heard before MORRISSEY, C. J., DAY, DEAN and GOOD, JJ., and SHEPHERD, District Judge.

SHEPHERD, District Judge.

In this case the appellee brought suit in injunction to prevent the appellant from practicing her calling as a beauty parlor expert in the city of Grand Island. She was successful, and the appellant appealed.

The one question in the case is whether or not the contract entered into between the parties is valid and enforceable.

Stripping the case from what is immaterial, this court has no difficulty in determining from the evidence, as the trial court did, that the appellee entered into the contract with full knowledge of its terms. Her contention is that when she signed the contract she did not understand that

she was precluded by it from further practicing her calling in the city of Grand Island. A clause of the contract is as follows: "It is hereby expressly agreed by the said party of the second part that she will not leave the employ of the said party of the first part for at least a period of twelve months after her return from taking said postgraduate course at Chicago, and that she will not engage in the business of hair or facial treatment or as a manicurist in the city of Grand Island either for herself or for another party, except as an employee of the party of the first part, hereafter." It appears, however, that she had the contract, or a copy of it, in her possession and that she read the same and fully understood and appreciated all of its conditions, including the paragraph quoted. This is clearly shown, not only by the fact that she read it and signed it under the circumstances above mentioned, but by the testimony of two credible witnesses. One swore that she referred to the fact in conversation with a friend in Chicago, and told the latter in her hearing that she had signed a contract whereby she could no longer pursue her trade in Grand Island. And the other testified to a personal conversation with her in which she stated, in substance, that she was not perturbed about the provision in question, because if she once got away from the town of Grand Island she never cared to return to it.

Mrs. Dow, the appellee, was running a beauty parlor in Grand Island, and Mrs. Gotch, the appellant, was working for her as an operator. Mrs. Gotch was considering going to Chicago to take a postgraduate course in the Marinello school, and Mrs. Dow offered her $100 to defray her expense in so doing, if she would work for her for a year upon her return, and agree not to engage in the business thereafter in Grand Island, either on her own account or for any other person. Mrs. Gotch accepted the offer, signed the contract, received the money, went to Chicago, took her postgraduate course, returned to Grand Island, and continued in the employ of Mrs. Dow for five or six months. At the end of that time she had an offer to go to

Cheyenne at a considerably greater salary than she was receiving from Mrs. Dow, and thereupon the latter, at her request, released her from the provision of the contract requiring her to remain in Grand Island and to work for her for the full year. Mrs. Gotch went to Cheyenne, remained there for several months, and then returned to Grand Island and entered the employ of a rival beauty parlor concern.

The early history of jurisprudence, particularly in England, shows that courts were loth to enforce contracts of this nature. The general rule was that agreements of this kind, in order to be valid, must be limited both as to space and time. But the later cases in this country have been decided upon the theory that such contracts will be enforced if they are ancillary to a main contract and limited either as to time or space, provided that they are also reasonable in their terms and operation. We think this is the law in the state of Nebraska.

The case of *Farmers State Bank v. Petersburg State Bank*, 108 Neb. 54, discloses a finding as follows: "That defendants, at the time they sold their banking business in Petersburg to plaintiffs, and as part consideration therefor, promised not to enter into the banking business again in said town." And the holding of the court was that this contract should be enforced. Again, in the case of *Roberts v. Lemont*, 73 Neb. 365, the court stated the general rule as follows: "A contract in restraint of trade, which is not limited either in time or space, is against public policy and void." And in the body of the opinion the following statement appears: "The general rule is that a contract in partial restraint of trade should be reasonable in its terms and limited in its extent, both as to time and space, but where the conditions appear to be reasonable and the contract is limited as to space, it is held that it may be enforced, even though unlimited as to time. *Gill v. Ferris*, 82 Mo. 156; *Smith v. Brown*, 164 Mass. 584. The test is whether the restraint is only such as is necessary to afford a fair protection to the interest of the party in whose favor

Dow v. Gotch.

it is given, and not so much as to interfere with the interest of the public. *Mandeville v. Harman*, 42 N. J. Eq. 185." The court denied an injunction in that case, saying that the proof was unsatisfactory, and that, if the evidence proved a contract at all, it established one which would prevent the defendants from engaging in business, not only at Norfolk, but at any other place in Nebraska or in the United States. In the opinion of the writer, however, it clearly established the doctrine which was applied in the later case of *Farmers State Bank v. Petersburg State Bank, supra,* and which is contended for by the appellee in the case at bar.

Now it is obvious that the appellee drew a contract which was very favorable to herself and not very favorable to the appellant. Appellant was to go to Chicago and get the latest wrinkle in Marinello work, and then give appellee the benefit of it by a year of service in her shop; and incidentally thereto she was to assure appellee that she would never become a competitor of hers in Grand Island. But it is clear from the record that Mrs. Gotch had ample time to consider, and was well advised of what she was doing. It is very plain that she wanted the post-graduate course, and was confident that she could secure remunerative employment elsewhere if she did not care to work for Mrs. Dow at the very excellent salary which she was receiving from her. There was no fraud or duress practiced upon her. She was not forced by circumstances to enter into the contract. There was no importunity to induce her to do so. She had been about the world a good deal, and was well able to take care of herself. Her little daughter was domiciled in Iowa. She had worked in many other places, and doubtless felt, as the event proved when she went to Cheyenne at an increased salary, that she could better herself in other cities. There was a good consideration and a main contract involved, and we are constrained to believe that the agreement thus fairly entered into should be observed by her, and held to be valid and enforceable by the court.

Times have changed since the day when an English court, upon being advised that a contract of this nature had been entered into, declared that if he had the employer present he would impose a fine upon him to be paid to the king. In that early day men did not go from place to place as they do now. The habit of covering a wide territory had not become prevalent. A journeyman stayed where he had been raised and where he had learned his trade. A removal to a place 50 miles or more away was a great undertaking. People did not go away from home, they stayed where they were put.

The situation is different here and today. A removal to another state is easy and comparatively inexpensive. Men and women of all employments go from one end of the country to another, and quickly find new places, and more advantageous places, in which to practice their vocations. With the development of railroad service and the automobile, people do not remain rooted to their native soil. Without danger to themselves and without detriment to the public, men and women may, and do, contract not to engage in particular work in a particular place. Modern living has extended the range of the individual. Mrs. Gotch realized that she could find employment or engage in business for herself in any one of a thousand towns quite similar to Grand Island, and not hard to reach. She had no consuming love for the city named, and said so. It was not the home of her youth or of her married life, nor the place where she domiciled her child. Nor did the city suffer. It had beauty parlors a plenty, a number of them. "A contract to be against public policy must have a mischievous tendency, and in some way militate against the public welfare and the rights of the public." The reason for the old rule has departed, and we fail to see why the more modern rule approved by this court should not be applied.

There is also an equity in the instant case which works strongly in favor of the appellee. While we recognize the principle that estoppel does not serve to give relief to one who relies upon a void contract, it seems well-nigh in-

Dow v. Gotch.

tolerable that a party should be permitted to take a sum of money from another, upon solemn agreement not to compete with such other, and then use what she has received in doing the very thing which she agreed not to do, while still retaining the money so paid.

We are of opinion that the district court made no mistake, and committed no error in the decree which was entered. The fact that it put a term to the operation of the contract cuts no figure in the case. It is true that it could not read life into a void contract by limiting its operation. But in any event its holding in this regard did no harm to the appellant. The contract was valid and enforceable as it stood. The judgment appealed from ought to be, and is,

AFFIRMED.

MORRISSEY, C. J., dissenting.

In my opinion, the terms of the contract are so unconscionable that a court of equity ought not to aid in their enforcement, and I, therefore, dissent.