[No. 20137.   Department One.   January 24, 1927.]

S. S. BARASH et al., *Respondents*, v. JOE ROBINSON,
*Appellant*.[1]

[1] INJUNCTION (26)—SUBJECT OF PROTECTION—BREACH OF CONTRACT.
In case the agreement is established by clear and satisfactory
proof, an injunction lies to restrain the violation of an agreement by which one sold his stock in a corporation transacting
the business of operating sight-seeing vehicles and in consideration thereof agreed not to engage in such business in a certain
city.

[2] SAME (26).   Where a valid agreement not to engage in the
business of operating sight-seeing vehicles in the city of S. is
clearly established and the violation apparent, equity will decree
its specific performance through an injunction without proof of
damage.

[3] APPEAL (387)—REVIEW—PARTIES ENTITLED TO ALLEGE ERROR—
ESTOPPEL—PARTY'S MOTIONS.   In an action to restrain the breach
of a contract not to engage in the business of operating sightseeing vehicles in the city of S. error cannot be assigned on
the fact that no damage was shown, where plaintiff objected
to the introduction of any evidence of damages on the ground
that it was immaterial, and the objection was sustained.

[4] CONTRACTS (46)—LEGALITY OF OBJECT—PREVENTION OF COMPETITION IN TRADE.   An agreement not to engage in the business
of operating sight-seeing vehicles in the city of S. in consideration of the purchase of stock in a corporation engaged therein,
is not void as being in restraint of competition in trade.

Appeal from a judgment of the superior court for
King county, Findley, J., entered July 26, 1926, upon
findings in favor of the plaintiffs, in an action for injunction, tried to the court. Affirmed.

[1]Reported in 252 Pac. 680.

*Roberts & Skeel* and *Elwood Hutcheson,* for appellant.

*Ryan & Desmond* and *Wesley J. Mifflin,* for respondents.

MITCHELL, J.—For several years prior to December 10, 1925, the Metropolitan Sight-Seeing Company, a corporation of Seattle, maintained and operated in that city a fleet of cabs or sight-seeing vehicles. Joe Robinson owned stock in the corporation and at the same time was engaged in behalf of the corporation as a solicitor for tourist patronage. At his request, S. S. and A. J. Barash bought all of his stock on December 10, 1925, as they alleged, for three thousand eight hundred dollars, and in consideration of his oral promise and agreement not to engage in similar employment and solicitation for any competing company or himself in the city of Seattle. Thereafter, he assisted in the organization in Seattle of the Brown & White Sight-Seeing Company and became active in its behalf in soliciting the patronage of tourists in that city during the season of 1926. Thereupon, this action was commenced by the Metropolitan Sight-Seeing Company, and S. S. and A. J. Barash, as partners, to enjoin him and the Brown & White Sight-Seeing Company and each of them from in any manner engaging in the sight-seeing business in the city and from soliciting the trade and patronage of the hotels and touring agencies in the city.

The defendants appeared by separate answers to the complaint. The defendant Robinson in his answer admitted that he had made a payment on stock that he agreed to purchase in the Brown & White Sight-Seeing Company; that the plaintiff corporation was and had

been engaged in sight-seeing business and that he was formerly in its employment; that he was employed by the Brown & White Sight-Seeing Company, for which he had, and was then, soliciting patronage; and that on December 10, 1925, he sold to S. S. and A. J. Barash all of his capital stock consisting of one hundred and twenty-five shares in the plaintiff corporation for the sum of three thousand eight hundred dollars. He denied all other substantive allegations of the complaint.

Upon the trial, the case was ordered dismissed as to the Brown & White Sight-Seeing Company and the plaintiff corporation. The defendant, Joe Robinson, was enjoined from directly or indirectly engaging in the sight-seeing business or as solicitor for any such business in the city of Seattle except for the Metropolitan Sight-Seeing Company, only so long, however, as S. S. and A. J. Barash continue to own stock in that corporation. He has appealed from the judgment.

[1] The first assignment of error is that the respondents did not prove a contract. More correctly, the contention is that there was no definite statement that would constitute an agreement; that at most, according to the testimony on behalf of the respondents, all that the appellant said was that if he sold his stock he would go into some other business, but that he did not promise or agree not to engage in similar business for himself or some other party. It appears the appellant had been active and successful as a solicitor of tourist patronage for several seasons and that the respondents knew it at the time of the agreement. He represented to them, as their witnesses testified, that he was dissatisfied with such seasonal employment of three months; "that he did not like that nine months of hunting for a living"; that he then had an opportunity to go into the junk business with another if he

could raise money by the sale of his stock. Miss S. S. Barash testified:

"Q. What promises did he make you as to his retirement from the business? A. He said he was absolutely through and he had to get out of it and do something else. Q. Did he make an agreement that he would not work for anybody else in that business? A. Yes, he did. Q. Was that retirement from the business in the City of Seattle? A. That is what he said. . . . Q. Did you consider, or what induced you to purchase that stock? A. The fact he was retiring from the company and he was going into something else. I would under no circumstances want him for a competitor or have invited such a situation."

On cross-examination, she further said:

"Q. But there was nothing in the contract about his staying out of business? A. The thing was oral. Q. I say, you have nothing in writing saying he would stay out of the business? A. We had witnesses. Q. And you say that you expected and understood he was going to stay entirely out of that business? A. Absolutely. Q. For all the future? A. Yes, sir. Q. Absolutely and for all time? A. Yes, sir. Q. And now you are claiming you have some kind of an understanding this man would never again engage, directly or indirectly, in the sight-seeing business and you did not take enough interest to put it in writing? A. I took him so thoroughly on his word in my dealings with him. Q. Did it not occur to you a man might change his mind? A. Not under the existing circumstances, no. Q. Suppose his deal with his brother-in-law fell through and he could not get into anything else and he had a chance to get into business with a sight-seeing company, did you not understand he would be allowed to do that? A. He gave us his assurance that he would work only for this company. He was selling on good faith. Q. Put it this way. After examining the statement and getting his statements, you were satisfied were you not, it would pay you as an investment? A. Yes, sir,

if he stayed out of business. This thing was not anticipated.''

Mr. A. J. Barash testified:

''Q. What promise, if any, or agreement did he make to retire from the business in the City of Seattle? A. During the negotiations I asked him what he was going to do if he disposed of his business to us and he said, 'I will not go into the sight-seeing business any more in the City of Seattle.' Q. Did he say anything about not going to work for anybody else? A. He stated he would not work for any one else, any other company but the Metropolitan Sight-Seeing Company. Q. Now, would you and your sister have purchased that stock in the absence of that agreement? A. We would not, no, sir.''

Other testimony from the same and other witnesses corroborative of that already mentioned was given, but enough has been recited to meet the rule relied on by the appellant to the effect that a valid agreement in restraint of trade must be established by clear and satisfactory proof in order to justify a court in restraining its breach by injunction. The trial judge who saw and heard the witnesses was so convinced, notwithstanding contrary testimony by the appellant. We are satisfied, as was the trial court, upon the matter.

[2] It is contended further that respondents proved no damage, which it is claimed was necessary to the granting of an injunction, Appellant admitted in his answer and on the witness stand that he had and was continuing to work for a competing company. In granting relief in a case of this kind involving the continuance and intentional breach of a negative covenant, the court in effect decrees its specific performance on the same principle that it would an affirmative covenant. High on Injunctions (4th ed.), § 1134.

High on Injunctions (4th ed.), § 1135, says:

"In the exercise of its jurisdiction by injunction to restrain the violation of contracts, equity looks only to the terms of the contract itself, and is not governed by considerations of the relative convenience and inconvenience to the parties likely to result from granting or withholding the relief. And if the contract right is clearly established and the violation is apparent, the agreement being of such a nature as to be capable of specific enforcement, an injunction may be granted regardless of inconvenience to defendants. . . . And the fact of the violation of the contract being established, the court may interfere without requiring proof of actual damage."

To the same effect see Kerr on Injunctions (5th ed.), p. 370.

[3] Besides, after the respondents had introduced evidence tending to show that the appellant had alienated tourist patronage contrary to his agreement, they proposed to show loss they had sustained thereby. Appellant objected on the ground that it was irrelevant and immaterial. The court stated that it was immaterial, saying that respondents had already been permitted to show by a witness that the appellant, through the Brown & White Sight-Seeing Company, had secured business formerly handled by the Metropolitan Company. Thereupon counsel for appellant again objected, saying, "This is not an action for damages". The court sustained the objection. Appellant invited the course pursued and cannot claim error, if otherwise he would be entitled to do so. *Lantz v. Moeller,* 76 Wash. 429, 136 Pac. 687.

[4] The next assignment questions the validity of the contract. It is contended that the contract is void, (1) because it is in restraint of trade, and (2) because, being a contract not to be performed within one year, it is under the ban of the statute of frauds. As to the

first point, the contract is limited as to the place but not as to time. We upheld a similar contract in *Johnson v. Schultz*, 137 Wash. 584, 243 Pac. 644. It does not appear, however, that this precise point was raised in that case. However, the great weight of authority supports the validity of such contracts. Some of the authorities to that effect are as follows: *Kramer v. Old*, 119 N. C. 1, 25 S. E. 813, 34 L. R. A. 389, not to continue the business of milling in the vicinity of Elizabeth City; *Smith v. Webb*, 176 Ala. 596, 58 South. 913, 40 L. R. A. (N. S.) 1191, not to engage in the livery business in opposition to R. J. Smith in Pell City; *Foss v. Roby*, 195 Mass. 292, 81 N. E. 199, 10 L. R. A. (N. S.) 1200, not to practice dentistry, the agreement by implication being limited to the city of Boston; *Southworth v. Davison*, 106 Minn. 119, 118 N. W. 363, 19 L. R. A. (N. S.) 769, not to engage in the laundry business within a radius of five miles from the city of Northfield; *Scherman v. Stern*, 93 N. J. Eq. 626, 117 Atl. 631, not to engage in selling cigars, stationery and candy in a given borough of about 3500 population; *Lappono v. Marmone*, 204 App. Div. 496, 198 N. Y. Supp. 433, not to engage in the hat cleaning and shoe repairing business within a radius of six blocks; *Randolph v. Graham*, 254 S. W. (Tex. Civ. App.) 402, not to practice medicine in or within twenty miles of Schertz; *Dow v. Gotch*, 113 Neb. 60, 201 N. W. 655, not to engage in the hair or facial treatment or as a manicurist in the city of Grand Island; *Breeding v. Tandy*, 148 Ky. 345, 146 S. W. 742, not to engage in the livery business in the town of Glasgow; *Weickgenant v. Eccles*, 173 Mich. 695, 140 N. W. 513, not to engage in mercantile business in Battle Creek.

13 C. J. pp. 469, 470, § 416, speaks of the rule as follows:

"Even according to the early rule, it is no objection to an agreement reasonably limited in point of space that it is unlimited in point of time and may therefore continue during the whole life of the party restrained. Thus the courts have repeatedly sustained as valid agreements by the vendor of a business, trade, or profession, or by employees, etc., without limitation as to time, not to carry on the business, trade, or profession in a certain town, village, city or county, even though it be a large city; within certain limits in a city; in a town or city, and vicinity; or at any place which will interfere with the business sold. The courts have also sustained an agreement not to run a stage on a specified road, and an agreement by a vendor of a milk route not to serve milk over the same route."

See, also, 6 R. C. L. 799-800; Elliott on Contracts, § 812.

We may notice some of the cases relied on by the appellant. The first case is *Fisher Flouring Mills v. Swanson*, 76 Wash. 649, 137 Pac. 144. Emphasis is placed on the following language found in that case,

"Such contracts are valid only when restricted as to time and to place, and when reasonably necessary to the protection of the party in whose interest they are made. Conversely stated, such contracts when without limit as to time or place are invalid. *Long v. Towl*, 42 Mo. 545, 97 Am. Dec. 355."

The language was used in connection with the rule relating to "contracts in restraint of trade", while the case before the court for decision was not that kind of a contract, but one more correctly designated as a "contract in restraint of competition". The language was employed only for the purpose of distinguishing and making more pronounced the rule and reason applicable to contracts in restraint of competition as compared with the tests in determining the validity of contracts in restraint of trade. It may be that the first

sentence was unfortunately worded, at least appellant's understanding of it is confused, but manifestly the real thought intended was expressed in the last sentence to the effect that "such contracts, when without limit as to time or place are invalid". We say that was manifestly the thought, because the Missouri case of *Long v. Towl,* cited as supporting authority, lays down the rule as follows:

"A contract prohibiting one of the parties from carrying on any specific trade or business, without limit as to time or place, is doubtless void; such contracts to be binding, must have reasonable limitations as to the place".

The case of *Davis v. Jointless Fire Brick Co.,* 300 Fed. 1, cited by appellant, was controlled by a statute of California on that subject. In *Chappel v. Brockway,* 21 Wend. (N. Y.) 157, it was decided that a contract not to pursue an occupation, or carry on a particular business, at any place in the state would be void, but that a contract for a limited restraint, that is in a particular place or within certain limits, is valid if shown to have been entered into for good reasons. The case of *Alger v. Thatcher,* 19 Pick. (Mass.) 51, 31 Am. Dec. 119, considered a contract that sought to "exclude the obligor from engaging in the trade of an iron founder everywhere and at all time." The case of *Bowser v. Bliss,* 7 Blackf. (Ind.) 344, 43 Am. Dec. 93, is squarely against the appellant. That case upheld a contract not to engage in business in a limited and specified territory. In *Lawrence v. Kidder,* 10 Barb. (N. Y.) 641, a one judge decision in 1851, it was held that a contract not to engage in business in all that portion of the state of New York west of the city of Albany was void, the restriction involving too large a territory.

In the present case, the respondents were not buying out the appellant to prevent the public from being served in that line of business, but to protect their own business of the same kind, and, in our opinion, the contract is valid and that breach of it enjoined is necessary in the reasonable protection of the business of the respondents.

[5] Nor is the contract invalid for the other reason assigned, that is as being under the ban of the statute of frauds. The statute relied on, a portion of Rem. Comp. Stat., § 5825 [P. C. § 7745], declares to be void "every agreement that by its terms is not to be performed within one year from the making thereof." The contract must contain "terms" showing that it is not to be performed within a year. There are no terms in the contract here, as testified to by the witness and established by the judgment, that the contract is not to be performed within a year. Certainly the death of the promisor would terminate it and his tenure of life like that of all other mortals is subject to the natural law, he may die at any time within a year. Brown, Statute of Frauds, § 277, p. 364. *Worthy v. Jones,* 11 Gray (Mass.) 148, 71 Am. Dec. 696; *Nickell v. Johnson,* 162 Ky. 520, 172 S. W. 938; *Hampton v. Caldwell,* 95 Ark. 387, 129 S. W. 816; *Tomlin v. Clay,* 167 S. W. (Tex.) 204. The case of *Tracy v. Burton,* 139 Wash. 440, 247 Pac. 734, cited by appellant is not in point. The contract in that case was one which by its terms was not intended and could not be performed within five years.

What has already been said sufficiently disposes of other assignments of error nominally stated in the brief. The appellant admits having received pay for the promise and agreement involved in the controversy, and we are of the opinion that the injunction

requiring him to comply with that agreement is cor-
rect.

Affirmed.

TOLMAN, MAIN, and FULLERTON, JJ., concur.