[No. 30040. Department Two. December 26, 1947.]

CHARLES H. CAMPBELL et al., *Appellants*, v. R. C. WEBBER et al., *Respondents and Cross-appellants*.[1]

[1]Reported in 188 P. (2d) 130.

*Cowan & Haugan,* for appellants.

*Eggerman, Rosling & Williams (Henry E. Kastner,* of counsel), for respondents and cross-appellants.

ROBINSON, J.—Action was instituted in this case to enforce specific performance of an agreement to sell real estate and personal property, consisting of a gasoline station and its equipment.

The complaint contains allegations that: Defendants husband and wife owned certain community real property in King county, and also owned several pieces of personal property used in a gasoline filling station. May 14, 1945, defendant R. C. Webber, on behalf of the community, executed an earnest-money receipt by the terms of which they were to sell to plaintiffs the real and personal property above mentioned. Mrs. Webber did not sign the agreement, but worked in the office with her husband, took part in the negotiations leading up to the signing of the agreement, prepared memoranda concerning it, aided "in bringing about the deal," ratified it, and was estopped from making any claim that the contract was executed without her consent. Defendants refused to comply with the agreement.

In their answer, defendants admitted the ownership of the property referred to in the complaint; admitted that R. C. Webber had signed the contract and had refused to convey their real property.

As an additional answer and cross-complaint, defendants alleged that: The real property was, prior to May 1, 1945, leased, by a verbal contract, to another person, who operated thereon a gasoline service station, and that there was an agreement between plaintiffs and defendants that the rent of twenty-five dollars per month should be paid to defendants. During the month of May, 1945, negotiations were entered into between plaintiffs and defendants wherein

plaintiffs agreed to buy the real and personal property for twenty-five hundred dollars in cash and give back to defendants a lease for a term of five years, with a five-year extension thereon, so that they might operate a gasoline service station on the property.

On or about May 14, 1945, respondent R. C. Webber, relying upon the agreement, executed the contract mentioned in plaintiffs' complaint. Defendant La Verne L. Webber did not execute the agreement and never consented to its terms or conditions. During the latter part of May, plaintiffs obtained possession of the property from defendants' lessee, and thereafter refused to execute a lease to defendants or to surrender possession of the premises. The reply denied the allegations of the separate answer and cross-complaint.

After trial, the court made its findings of fact and conclusions of law, and entered a decree in favor of defendants. The findings of fact included the following:

"That said earnest money receipt and agreement between the parties was executed only by defendant R. C. Webber and not by his wife. That said wife, however, participated in the negotiations for said sale, discussed the terms of same with plaintiffs, was present during the negotiations between plaintiffs and defendant R. C. Webber, and had full knowledge of the agreement between them. That when plaintiffs and defendant R. C. Webber had finally agreed to the terms of said sale, said defendant wife, in the presence of all of them, stated to defendant R. C. Webber that 'if it is satisfactory to you, it is satisfactory to me.' "

The court then entered a decree for specific performance of the contract signed by Mr. Webber, and gave defendants judgment for the sum of $1,048.04. Plaintiffs appealed from the money judgment, and defendants cross-appealed from that part of the decree which provided for a specific performance.

We shall refer to the Campbells as appellants, and to the Webbers as respondents.

Appellants' assignments of error are that the court failed to strike the cross-complaint from the answer permitting the introduction of evidence to support the cross-complaint; further, that it erred in decreeing specific performance and

giving damages for the alleged violation of an oral contract, in disallowing a supplemental complaint, and in failing to allow appellants damages suffered because of respondents' failure to convey the property.

The assignments of error made by the respondents are that the court erred in holding that Mrs. Webber was estopped from disaffirming the earnest-money contract; in holding that respondents must deed the property to appellants; in not finding that appellants agreed, and then failed, to give a lease of the premises to respondents; and in awarding only judgment in the sum of $1,048.04.

The evidence may be summarized as follows: Appellants, who are father and son, reside at Kent, while the respondents live at Puyallup. Mr. Webber is a local distributor for the Associated Gasoline Company. The property, which is located at Kent, consists of premises on which is located an automobile service station dispensing products of the Associated Gasoline Company. At the time of the agreement, the property was in possession of a tenant under a month-to-month lease. Mrs. Webber worked in her husband's office in Puyallup, doing the stenographic and bookkeeping services.

Appellants, desirous of purchasing a gasoline station, approached respondent R. C. Webber and opened negotiations for the purchase of the premises owned by himself and wife. May 14, 1945, they reached an agreement that the purchase price should be twenty-seven hundred dollars. Appellants testified that they came to a complete understanding regarding the sale; that respondent R. C. Webber requested continued representation at the station of the products of the Associated Gasoline Company, and that they assured him of such continued representation; but that there was no mention of any lease by them back to respondents or a sublease by respondents to appellants. They testified that there was some discussion relative to their marginal profit, and that respondent Webber assured them that, as long as they continued to dispense Associated products, they would receive gasoline at one-half cent per gallon less than the regular tank prices.

Respondents Webber testified that the matter of a lease by appellants back to them was discussed and agreed upon; further, that the lease was to be for a term of five years, with an option in favor of the lessees to extend the lease for a further period of five years, and that as rental the lessees would pay to the lessors one-half cent for each and every gallon of gasoline dispensed at the station. They also testified that they were to execute a sublease back to appellants for a like period of time at a rental of one dollar a year.

Both parties, to their detriment, went to the office of a real-estate agent, where Mr. Webber executed the agreement drawn by the agent. Webber received a check for one hundred dollars, marked "earnest money." This check was later deposited by Mrs. Webber in their bank account.

The agreement did not contain any provision that the purchasers would execute a lease of any kind; nor is there any reference therein to any obligation on the part of the purchasers to continue to use the products of the Associated Gasoline Company.

May 29, 1945, appellants obtained possession of the premises from the tenant, notified Webber of the fact, and requested delivery of gasoline. Delivery was made the subsequent day. Thereafter, appellants purchased gasoline from respondents until after this controversy arose and the institution of this suit.

On or about June 12, 1945, respondent Webber presented to appellants a form of lease for their signature, which they refused to sign. A few days later, he tendered back to appellants the earnest money received from them. Webber testified that, when he presented the lease to appellants, he did not present a sublease because that instrument had not as yet been completed.

It appears that appellants purchased a building which they intended to move upon the premises. That was not done, however, because they sold it to other persons.

Mrs. Webber's version of the agreement is indicated by the following quotations from her evidence:

"A. The younger Mr. Campbell said, 'We think you want to do business with us.' Q. Whom did he say that to?

A. Well, I think he directed his conversation to Mr. Webber because I was working at the counter at the time. Q. And what was Mr. Webber's reply? A. Well, I don't remember exactly. He said—just the exact words he used, but he said, 'Well, if we can come to some agreement, if we can come to a price, and you know what arrangements we have discussed,' he said, 'I never, never would consider selling this property without a good firm ground lease. You understand that, Campbells?' And the elder Mr. Campbell said, 'Webber, we had just as soon do business with you as anyone else.'
. . .

"Q. Then finally an agreement was arrived at? A. Yes. Q. And that agreement is what, according to your understanding, at the time? A. It was $2,700 plus a firm lease, a 5-year lease with a 5-year option for renewal, and half a cent a gallon rental. Q. The half cent per gallon went to whom? A. To the Campbells. . . .

"A. Well, I think it was about that time that Mr. Campbell said, 'I think it is a good deal for us and I think it is a good deal for you,' and Mr. Webber said, 'Yes, Mr. Campbell, I think it is a good deal for you.' He also said to me, 'What do you think of it?' And I said, 'Well, you know at no time have I been anxious to dispose of this property, but providing there is a firm lease and it is all right with you'—MR. COWAN: Just a moment. Was either of the Campbells present at that time? THE WITNESS: They were both there."

She testified that she had not seen the earnest-money receipt until it was produced in court, and that at no time had she been willing to sign a deed to the property "without the land lease back." Her husband's evidence was to the same effect.

Mr. William Campbell testified:

"Q. What price did you agree upon? A. $2,700. Q. Now, was Mrs. Webber present during this time? A. Mrs. Webber was present up until she—she left for perhaps 30 minutes or so for lunch. During the time that she was gone was when we got together on the price. We made Mr. Webber two offers. He accepted the second offer that we made. When Mrs. Webber returned he told her that we had finally gotten together. Q. What did he tell her, as near as you can remember his conversation? A. I can't quote it verbatim, but he told her that we had finally gotten together and agreed upon a price. He says, 'It is less, of course, than what we agreed to sell it for between ourselves, but,' he says 'it is

$2700.' Mrs. Webber said, 'Well,' she said, 'if it is all right with you, it is all right with me.' . . .

"A. When we were supposed to go to Auburn to have these papers drawn I asked Mrs. Webber for a copy of the equipment she had already written out as dictated by Mr. Webber. Q. Did she give you a copy? A. She did."

The testimony of Mr. Charles Campbell corroborated that given by his son, William Campbell.

■ The court found that there was no agreement to lease the property back to respondents. We must adopt the facts as found by the trial court. We do this for the reason that the trial judge saw and heard the witnesses testify, and was therefore in a much better position than this court to ascertain the truth.

■ It must be admitted that a husband cannot sell, convey, or encumber community real property unless his wife joins him in the deed or other instrument of conveyance. Rem. Rev. Stat., § 6893 [P.P.C. § 434-29].

■ It is also true that a wife may challenge her husband's acts when enforcement is sought of a contract such as we have before us in this action.

■ It must be further admitted that an estoppel may be successfully urged against a wife who, by her acts, leads purchasers into a false position, to their detriment. *Hay v. Chehalis Mill Co.*, 172 Wash. 102, 19 P. (2d) 397. The principal question presented here is whether or not the facts presented constitute an estoppel on the part of Mrs. Webber.

While there are many cases in our state having to do with the general question of estoppel, only a few of them have facts similar to those present in the case at bar. We note the following as a guide in deciding the question before us:

It appears in *O'Connor v. Jackson*, 33 Wash. 219, 74 Pac. 372, that a husband owned community real property and placed the purchaser in possession under an oral agreement of sale made by himself. Thereafter, the consideration was paid by the purchaser. This court affirmed a decree of specific performance, upon the theory that the consideration paid by the purchaser was presumed to move to the com-

munity and the assent of the wife is presumed until the contrary is made to appear.

In *Hargrave v. Colfax*, 89 Wash. 467, 154 Pac. 824, the court was faced with the question whether a marital community was bound by a contract involving community real estate signed by the husband only. The facts in that case had to do with the improving of a street abutting property owned by the community. The husband signed a petition to the city council to regrade and improve the street adjacent to the property. The regrade cut each street at the corner of appellants' property several feet below the old-established grade. When the graders started to work, appellants called attention of the street committee of the city council to the fact that, if the grade was made as indicated by the work being done, a retaining wall would fall and appellants' property would slide into the street. The street committee of the council viewed the premises with the husband, and an agreement was made to make a fill in order to hold the old retaining wall in place to prevent it from falling. Some damage was done to the property by the improvement, and the husband and wife owning the property brought an action against the city to recover damages because of the diminished market value of the property. It was contended on behalf of the community that the wife never agreed to the building of the wall as a settlement of all the questions that might arise between them. In passing upon the question, this court had occasion to say:

"There is evidence in the record tending to show, that the wife first discovered the nature of the grade or cut that was being made adjacent to their property; that she telephoned her husband, and that her husband came to see the work and called the street committee of the city council to act in the matter. The wife did not testify. Whatever agreement was made, was made at their residence. They resided upon the premises all the time. The appellants certainly cannot be heard to say that the community could authorize the husband to act as the agent to make one contract in regard to the matter then in controversy, for the benefit of appellants and which was acted upon by respondent, but not another. The wife knowingly permitted the husband to deal with the

matter. Under the circumstances, we think there was suffi-
cient evidence to warrant the jury in finding that the
agreement was made for and with both appellants."

Of like import is *In re Horse Heaven Irr. Dist.*, 19 Wn.
(2d) 89, 141 P. (2d) 400.

█ Deciding the question in line with the cases just cited
and the trial court's findings of fact, we must hold that Mrs.
Webber was estopped to deny liability based upon an
earnest-money receipt. She was present throughout the
negotiations leading to the signing of the agreement. She
indicated her willingness to abide her husband's decision.
She received and deposited in the bank the check given her
husband by appellants as part of the purchase price of the
property. She knew that appellants took possession of the
property and knew of her husband's sale of gasoline to them.

The next question for consideration involves the judgment
given respondents for $1,048.04. Appellants contend that no
such judgment should have been rendered, while respond-
ents argue that it should have been in a larger sum. The trial
court found that there was an agreement on the part of
appellants to buy their gasoline from respondents, who were
distributors of that commodity in their city. The court also
decided, upon competent evidence, that appellants had
breached that agreement. The findings read as follows:

"(3) That at said time [May 14, 1945] there was an
understanding between the parties that plaintiffs would
continue 'representation' of said defendants for the sale of
Associated Gasoline and Oil Products at said place in Kent.
That said negotiations were begun in Puyallup, and the
written earnest money agreement executed later on said
day in Kent.

"(9) That on said August 14, 1945, because of said failure
to obtain gasoline, and because defendants refused to exe-
cute said conveyance as agreed in said earnest money re-
ceipt, plaintiffs quit selling the said gasoline products of
which defendants were agents, and began to obtain gasoline
and such products from another company, and ever since
have used the products of said other company on said
property.

"(10) That no definite time was agreed upon between the
parties for the continuance of said oral contract.

"(11) That the plaintiffs breached their oral contract to buy gasoline and oil from the defendants, and purchased 43,069 gallons from third parties for the period ending March 1, 1946, and 9,333 gallons for the month of March and to April 17, 1946; that therefore the defendants were damaged in the sum of 2¢ per gallon, which is the amount of the defendants' reasonable profit on gasoline sales per gallon."

The evidence was in conflict. That produced by respondents was amply sufficient to prove the contract and its violation. The evidence introduced by appellants was sufficient to show that no such agreement was entered into. Again, we must base our decision on the facts as found by the trial court because that court was in a better position to ascertain the actual situation. The evidence was carefully considered by the trial judge, as indicated by his oral opinion given at the close of the trial. We will not disturb his findings.

In their reply brief, for the first time appellants contend that the oral contract was void under our statute of frauds. Rem. Rev. Stat., § 5825 [P.P.C. § 577-3]. This argument should not be considered because it was not presented in the opening brief or in the assignments of error. It is clear, however, that the statute does not apply. The oral agreement did not define the time the contract was to run. It is a well-established rule in this state that the statute above mentioned applies only to agreements which cannot be performed in one year. This statement is supported by the following decisions:

"Appellant maintains that the contract relative to the fifty thousand dollar loan violates Rem. Rev. Stat., § 5825 [P.C. § 7745] (1), which provides that agreements not to be performed within one year from the making thereof must be in writing, signed by the party to be charged therewith.

"The trial court was of the opinion that the statute did not apply in this case, because it was not necessary that the obligation to pay Jensen should arise more than a year from the date of the agreement, nor were the von Herbergs precluded from paying Jensen the amount involved whenever they saw fit.

"We agree with the trial court that the statute of frauds has no application, for the reason that the contract was of

526

the sort which could be performed at any time after its date. It was entirely possible, under its terms, that Jensen would sell the premises at once, sustaining a loss, and securing a right thereby to be reimbursed for one-half thereof by the von Herbergs, up to the fifty thousand dollar maximum. Further, there was nothing about the agreement which precluded the von Herbergs from paying the fifty thousand dollars to Jensen at any time they pleased. Hence, the case came within the rule of *Dent Lumber & Shingle Co. v. Cedarhome Lumber Co.*, 141 Wash. 593, 252 Pac. 141; *Barash v. Robinson*, 142 Wash. 118, 252 Pac. 680; and *Peabody v. Pioneer Sand & Gravel Co.*, 164 Wash. 26, 2 P. (2d) 714. Those cases all hold that Rem. Rev. Stat., § 5825 (1), has no application where performance *could* take place within one year. In other words, the contract *must* be one running for more than one year, before the statute will apply." *von Herberg v. von Herberg*, 6 Wn. (2d) 100, 129, 106 P. (2d) 737.

"It is next urged that the contract, not being in writing, violates Rem. Rev. Stat., § 5825 (1) [P.C. § 7745], providing that agreements not to be performed within one year from the making thereof must be in writing, signed by the party to be charged therewith. Under the facts of this case, however, the statute has no application. The contract was not only made for an indefinite length of time, but was terminable at will. Consequently, it could have been performed at any time after its inception, or terminated within the duration of a year at the will of either party. We have held that in such cases the statute does not apply. [Citing cases.]" *Sargent v. Drew-English, Inc.*, 12 Wn. (2d) 320, 328, 121 P. (2d) 373.

The judgment entered by the trial court was correct and is accordingly affirmed. Respondents will recover their costs on this appeal.

MALLERY, C. J., JEFFERS, STEINERT, and HILL, JJ., concur.