FARMERS UNDERWRITERS ASSOCIATION, A CORPORATION, ET AL., APPELLEES, V. LAURENCE B. ECKEL, APPELLANT.
FARMERS UNDERWRITERS ASSOCIATION, A CORPORATION, ET AL., APPELLEES, V. CLARENCE F. G. PETER, APPELLANT.
177 N. W. 2d 274

Filed May 15, 1970. Nos. 37335, 37336.

Cobb, Swartz & Wieland and Douglas W. Marolf, for appellants.

Baylor, Evnen, Baylor, Urbom & Curtiss and Robert T. Grimit, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SMITH, J.

Temporary orders enjoined former agents of plaintiff insurers from breaching covenants not to solicit plaintiffs' policyholders in the agents' district for 1 year. After expiration of the 1-year period without further judicial determination of the controversy, defendants alleged damage from the orders. The basic issue was enforceability of the covenants. The district court found for plaintiffs, dismissing the damage claims. Defendants appeal.

In November 1963, defendant Laurence B. Eckel, local agent since 1960, became manager of plaintiffs' district composed of Lancaster and adjoining counties. His agreement with plaintiffs provided as follows: Plaintiffs or Eckel had the right to cancel the agreement on 30 days' notification at will. Eckel was to represent no other insurer. Commission rates were to be fixed and changed in plaintiffs' sole discretion. Commissions and bonuses unpaid on effective date of cancellation were to be deemed unearned. After 3 years and at plaintiffs' request Eckel would sell 50 percent of his insurance business to plaintiffs' nominee as an additional district manager.

Eckel's agreement further provided: "C. (Eckel) . . . agrees . . . to surrender on . . . termination . . . all records, levy lists . . ., or other material . . ., whether or not furnished by any of the Companies, having to do . . . with the business of the Companies . . . H. (Eckel) . . . agrees that in the event of cancellation . . . For . . . one year thereafter he will . . . (not) solicit, accept or service . . . insurance business of any policyholder of any of the COMPANIES in the (district) . . . I. . . . all lists and records . . . pertaining

to policyholders or expirations . . . are . . . confidential . . . and shall never be used or divulged except as specifically authorized by, and for the benefit of, the COMPANIES."

Defendant Clarence F. G. Peter had been appointed local agent of plaintiffs in 1962. His agreement contained the substance of provisions applicable to Eckel as well as local agents. A supplement provided for payment of $485 a month to Peter under a program which imposed an obligation on him to repay any unearned part.

Defendants after their resignations breached the agreements by soliciting approximately 1,000 of plaintiffs' policyholders in the district. They intended to form an independent agency and to switch business to plaintiffs' competitors. At the time the number of plaintiffs' policies in effect in the district was 3,500, several hundred less than the number in effect in November 1963.

There is testimony concerning effect of specific enforcement of the covenants upon defendants. Eckel in 1965 was age 26 and father of four children. Peter was age 40 and father of four children, ages 10 to 18. The men possessed no other income source, no other skills, and no formal education beyond high school. Each furnished all support for his family. Eckel received gross commissions and subsidies in years indicated as follows: 1960 - $2,681.56; 1961 - $5,355.67; 1962 - $6,227.98; 1963 - $9,621.06; 1964 - $20,439.56; 1965 - $5,556.12. Plaintiffs notified Peter that his deficit under the program amounted to $1,719.72.

A requirement for specific enforcement of provisions for postemployment restraints in covenants ancillary to employment contracts is that the restraints be reasonable. Courts in considering the requirement strike a balance among competing interests of principal and agent. The balancing itself accommodates the public interest in productive, principal-agent relationship and in freedom of the individual to earn his own living. See Securities Acceptance Corp. v. Brown, 171 Neb. 406,

106 N. W. 2d 456 (1960), opinion supplemented, 171 Neb. 701, 107 N. W. 2d 540 (1961).

Among the circumstances to be considered in the determination of reasonableness of such covenants are the following ones: Degree of inequality in bargaining power. Presence of a substantial risk of the principal's losing customers to the former agent. Extent of respective participation by principal and agent in securing and retaining customers. Good faith of the principal. Existence of a directory or general knowledge pertaining to the list of customers. The nature and extent of the business position held by the agent and the circumstances of his employment. The agent's training, health, and education. Needs of the agent's family. Current conditions of employment. Necessity of the agent's changing his calling or residence. Correspondence of the covenanted restraint with the legitimate interest of the principal in protection. See, Securities Acceptance Corp. v. Brown, *supra;* Smith Baking Co. v. Behrens, 125 Neb. 718, 251 N. W. 826 (1933); Dow v. Gotch, 113 Neb. 60, 201 N. W. 655 (1924). See, also, Lakeside Oil Co. v. Slutsky, 8 Wis. 2d 157, 98 N. W. 2d 415 (1959); 6A Corbin on Contracts, § 1394, p. 89 (1962).

Elsewhere insurers in situations somewhat like the present ones have been allowed injunctive relief. See, Hedberg v. State Farm Mut. Auto. Ins. Co., 350 F. 2d 924 (8th Cir., 1965), affirming State Farm Mut. Auto. Ins. Co. v. Hedberg, 236 F. Supp. 797 (D. C. Minn., 1964); Farmers Underwriters Assn. v. Reid, 425 S. W. 2d 247 (Mo. App., 1967).

We conclude that plaintiffs were entitled to injunctive relief against Eckel and Peter unless at least part of defendants' following contention is good: Injunctive relief was not available because "mutuality of obligation" and mutuality of remedy were not present.

Plaintiffs rendered substantial performance by actual employment of Eckel and Peter for a substantial period. There was no lack of "mutuality of obligation" to defeat

specific enforcement. Different viewpoints on the general subject do not weaken our conclusion. See, Austin, "Mutuality of Obligation: A Multi-Dimensional Doctrine for All Seasons," 30 Ohio S. L. J. 61 (1969); 1A Corbin on Contracts, § 152, p. 2 (1963); 1 Williston on Contracts (3d Ed., Jaeger 1957), §§ 49 and 105A, pp. 158 and 427.

Respecting mutuality of remedy we have said if one party cannot enforce substantial performance, equity will not decree specific performance at the instance of the other party. See, Electronic Development Co. v. Robson, 148 Neb. 526, 28 N. W. 2d 130 (1947); Wilson v. Nelson, 130 Neb. 1, 262 N. W. 433 (1935), noted 17 Neb. L. Bull. 239 (1938); Rudolph v. Andrew Murphy & Son, 121 Neb. 612, 237 N. W. 659 (1931); Moore v. Markel, 112 Neb. 743, 201 N. W. 147 (1924). Those cases are distinguishable from the present cases.

"What equity exacts today as a condition of relief is the assurance that the decree, as rendered, will operate without injustice or oppression either to the plaintiff or the defendant. . . . Mutuality of remedy is important in so far only as its presence is essential to the attainment of that end. The formula had its origin in an attempt to fit the equitable remedy to the needs of equal justice. We may not suffer it to petrify at the cost of its animating principle." Epstein v. Gluckin, 233 N. Y. 490, 135 N. E. 861 (1922).

The fact that the remedy of specific enforcement is not available to one party is not sufficient reason for refusing it to the other party. Restatement, Contracts § 372(1), p. 677; 5A Corbin on Contracts, § 1210, p. 420 (1964). Defendants' contentions are without merit.

The judgments are affirmed.

AFFIRMED.