[No. 28286. Department Two. January 26, 1942.]

C. G. SARGENT, *Appellant*, v. DREW-ENGLISH, INC., *Respondent*, INTERNATIONAL SHOE COMPANY, *Appellant*.[1]

[1]Reported in 121 P. (2d) 373.

 

*Stern, Orton & Stern* and *Kenneth S. Treadwell,* for appellant.

*Lenihan & Ivers,* for respondent.

SIMPSON, J.—This case involves a contract for the sale of shoes entered into between Drew-English, Inc., and the International Shoe Company. The complaint alleged that the defendant was indebted to plaintiff's assignor, International Shoe Company, in the sum of $228.55 as the result of the purchase of shoes during the early part of the year 1939.

In its amended answer and cross-complaint, the defendant made the shoe company a party to the action as an additional defendant. Defendant admitted a balance due the additional defendant, as stated in the complaint, and then alleged that, on or about June 26, 1936, it made an oral agreement with the additional defendant whereby it was agreed that the additional defendant granted to defendant the exclusive right to sell "Winthrop Shoes" within the city of Seattle and that each would pay fifty per cent of certain advertising in Seattle newspapers.

It was further alleged that each party to the contract complied with the agreement until shortly before February 1, 1939, at which time the additional defendant sold and delivered a large quantity of shoes to a competing dealer within the city of Seattle to defendant's damage in the sum of fourteen hundred dollars.

In its answer, the additional defendant, after denying the allegations relative to damages, alleged:

"On or abou*n*t the month of June, 1936, a representative of additional defendant, orally stated to the defendant that it would grant to the defendant, exclusive right to buy from the defendant, Winthrop Shoes within the city of Seattle, and the said shoes were to be sold on open account 5% discount if payment be made within 45 days from date of delivery; that on the first order, one half should be paid in advance; thereafter additional defendant would pay 50% of the costs of advertising that defendant might do in the city of Seattle exclusively for Winthrop Shoes. Thereafter, defendant purchased from additional defendant, numerous orders of shoes. . . . "

Upon the issues thus presented, the case was tried to the court sitting without a jury, resulting in a judgment for defendant in the sum of $122.70 over and above the amount it owed on account. Plaintiff and additional defendant have appealed.

We are asked to reverse the judgment upon the following alleged errors: (1) In finding that an enforcible contract existed between the International Shoe Company and Drew-English, Inc.; (2) in finding that Drew-English, Inc., was damaged; (3) in entering the findings of fact and conclusions of law and judgment; and (4) in refusing to grant the appellant a new trial.

Plaintiff will not be mentioned in the discussion of this case inasmuch as he acted simply as an assignee for the purpose of collecting the account due to appellant, International Shoe Company.

The pertinent facts, in brief, are: On or about June 26, 1936, Harvey Conn, a salesman for appellant, and H. T. Ivers and Dan Drew, representatives for respondent, entered into an oral contract wherein respondent was granted the exclusive right to sell Winthrop shoes within the city of Seattle. It was also agreed that appellant would not deliver or sell its shoes to any other Seattle shoe retailer; that appellant would

pay for sixty inches of space in Seattle newspapers to announce the opening of the Drew-English store and to advertise the exclusive carrying of Winthrop shoes; that respondent would not handle or sell any other competing line of shoes within the price range of the Winthrop; that respondent would promote and develop a market for the appellant's shoe; and that both parties would thereafter share the expense for advertising the shoe. The contract was indefinite as to duration and quantity of shoes to be purchased.

Pursuant thereto, the parties operated under the contract until February, 1939. Having discovered in its December, 1938, inventory that only two hundred and eight pairs of Winthrop shoes were in stock, respondent placed an order for approximately fifty or sixty additional pairs. By a letter dated February 2, 1939, Mr. Conn informed respondent that the "agency" was terminated and given to another concern. Upon delivery February 15, 1939, of the fifty or sixty pairs of shoes, it was discovered that, although the shoes were identical in grade and quality, they did not possess the Winthrop label. Subsequently, respondent learned that its exclusive right to sell had been granted to a competing Seattle firm, and that this firm had commenced selling the Winthrop shoe in January, 1939.

At the trial it was shown that among manufacturers and retailers of shoes a trade custom exists, requiring parties to an exclusive sales contract to give reasonable notice of an intention to terminate. Moreover, the evidence disclosed that appellant not only failed to wait a reasonable time after Conn's notice of termination before selling to respondent's competitor, but also sold and delivered Winthrop shoes to the competitor before the notice had been given. Being unable to purchase more Winthrop shoes and to immediately acquire another exclusive line in the same price range,

respondent sustained a loss of $351.40 on the two hundred and eight pairs of shoes. On its refusal to pay for the fifty or sixty unbranded pairs, this action was instituted, and respondent thereafter cross-complained for appellant's breach.

Appellant makes four contentions: that its salesman, Harvey Conn, did not possess either express or implied authority to contract with respondent; that the contract lacked mutuality; that, since the contract was not in writing and could not be performed within one year, it was within the statute of frauds; and that respondent failed to prove damages.

With appellant's first contention, that its salesman did not possess authority to contract with respondent, we are unable to agree for two reasons. In the first place, assuming that Conn lacked authority to make the contract in question, nevertheless, appellant became bound by its subsequent conduct which manifested an intention to ratify the alleged unauthorized transaction. The uncontradicted evidence shows that appellant complied with its agent's contract in every respect from June, 1936, to February, 1939. Besides paying for newspaper space to advertise the fact that respondent was the exclusive Seattle Winthrop shoe agent, it also accepted respondent's orders and payment therefor until the present litigation. Moreover, since June, 1936, appellant received the benefit of respondent's efforts in handling and advertising the Winthrop shoe. Appellant, too, at all times accepted and retained the proceeds from the various shoe orders. Thus, after complying with its agent's contract for over two years, and accepting and retaining the benefits from this contract, appellant is now in no position to urge that it was unauthorized.

It is quite true that the power of every agent to bind his principal rests upon the authority conferred

by his principal. It is equally true that the unauthorized acts of an agent may be ratified by the principal expressly or by acts or conduct on the part of the principal which confirm the contracts of the agent. *Lemcke v. Funk & Co.*, 78 Wash. 460, 139 Pac. 234, Ann. Cas. 1915D, 23; *Matzger v. Arcade Bldg. & Realty Co.*, 80 Wash. 401, 141 Pac. 900, L. R. A. 1915A, 288; *Northwestern Lbr. Co. v. Cornell*, 99 Wash. 250, 169 Pac. 590; *Johnson v. Wilbur-Ellis Co.*, 136 Wash. 340, 239 Pac. 1018; *Tobias v. Towle*, 179 Wash. 101, 35 P. (2d) 1114, 41 P. (2d) 1119; 2 Am. Jur. 169, Agency, § 212; Restatement, Agency (1933), § 98, § 99.

Secondly, appellant's contention is untenable for the reason that its pleadings admitted not only that Conn made the contract, but that it operated thereunder and accepted respondent's orders pursuant thereto.

■ Appellant next contends that the contract lacked mutuality in that it "does not require the Drew-English Company to deal exclusively in 'Winthrop shoes' nor to purchase any given amount," citing *Brown v. Brew*, 99 Wash. 560, 169 Pac. 992.

Courts have not been very definite in their employment of the term "mutuality of obligation." In fact,

"This confusing word has obscured the issue in many cases. The courts have often used it as a synonym for the kind of consideration that is needed in bilateral contracts. On the other hand, they often use the term when the only question in the case is whether the *defendant* has made a promise. It seems clear that to look for 'mutuality' is to look at least, for two promises." 31 Columbia L. Rev. 830, 831.

However, it may be stated that the term as applied to the doctrine of mutuality is merely another way of saying that there must be a valid consideration. 1 Williston, Contracts (Rev. ed. 1936) 504, § 141; 1 Page, Contracts (2d ed. 1920) 951, § 565. See, also, *Warner v.*

*Channel Chemical Co.,* 121 Wash. 237, 208 Pac. 1104. The following comment on the terms "mutuality" and "consideration" in 12 Am. Jur. 510, § 13, is, at this point, helpful:

"Inasmuch as a promise by one person is merely one of the kinds of consideration that will support a promise by another, mutuality of obligation is not an essential element in every contract. Therefore, to say the least, language which is susceptible of the interpretation that consideration and mutuality of obligation are two distinct elements lacks precision. Consideration is essential; mutuality of obligation is not unless the want of mutuality would leave one party without a valid or available consideration for his promise. The doctrine of mutuality of obligation appears therefore to be merely another mode of stating the rule of consideration that where there is no other consideration for a contract, the mutual promises must be binding on both parties, for the reason that only a binding promise is sufficient consideration for a promise of the other party. But where there is any other consideration for the contract, so that each promise does not depend upon the other for consideration, mutuality of obligation is not essential."

The precise question, then, narrows itself into whether or not this contract contains sufficient consideration for appellant's undertaking. With the preceding comment and question in mind, we examine the terms of the contract as disclosed by the record. Appellant manufacturer promised that respondent was to be its exclusive Winthrop shoe agent within the city of Seattle, if it would agree to promote and develop a market for the shoe and to forbear handling or selling a competing line within the price range of appellant's; that it would not sell or deliver Winthrop shoes to any other Seattle retailer; that it would pay for sixty inches of space to advertise the opening of respondent's store; and that it would pay for one-half of the subsequent

cost of advertising Winthrop shoes. Respondent retailer, on the other hand, promised that it would not handle or sell any competing line of shoes within appellant's price range; that it would develop and promote a market for Winthrop shoes; and that, at appellant's request as a manifestation of good faith, it would pay one-half of the initial order in cash.

Contrary to appellant's view, we find sufficient consideration not only in respondent's promise to promote and develop a market for Winthrop shoes, a legal detriment in the form of a promise to perform a positive act (*Hollweg v. Schaefer Brokerage Co.*, 197 Fed. 689; *Marrinan Medical Supply, Inc. v. Ft. Dodge Serum Co.*, 47 F. (2d) 458; *Peck-Williamson Heating & Ventilating Co. v. Miller & Harris*, 118 S. W. (Ky.) 376; *Elson & Co. v. Beselin & Son*, 116 Neb. 729, 218 N. W. 753; *Leisy Brewing Co. v. Schafer*, 91 Okla. 105, 216 Pac. 109; *Sheesley v. Bisbee Linseed Co.*, 337 Pa. 197, 10 A. (2d) 401; *New Idea Spreader Co. v. Rogers & Sons*, 122 Va. 54, 94 S. E. 351; *Taylor Co. v. Bannerman*, 120 Wis. 189, 97 N. W. 918), but also in its promise to forbear handling or selling a competing line of shoes within appellant's price range, a legal detriment in the form of a promise to forbear (*Elson & Co. v. Beselin & Son, supra; Ehrenworth v. Stuhmer & Co.*, 229 N. Y. 210, 128 N. E. 108; 4 Williston, Contracts (Rev. ed. 1936) 2862, § 1027A). See, also, *Abrams v. George E. Keith Co.*, 30 F. (2d) 90; 45 A. L. R. 1197.

That the contract, in spite of these promises, lacked sufficient consideration (mutuality) because respondent was not obligated to purchase a definite quantity of shoes, is untenable. *Parks v. Elmore*, 59 Wash. 584, 110 Pac. 381. An examination of exclusive sales agency and kindred cases reveals that a sharp distinction must be drawn between contracts composed of promises to

buy and sell, one of which is not consideration for the other, and contracts with promises as in the first situation, but which possess, in addition, other valuable considerations. It is the latter with which we are concerned. This point is illustrated in *Brown v. Brew, supra.*

It is next urged that the contract, not being in writing, violates Rem. Rev. Stat., § 5825 (1) [P. C. § 7745], providing that agreements not to be performed within one year from the making thereof must be in writing, signed by the party to be charged therewith. Under the facts of this case, however, the statute has no application. The contract was not only made for an indefinite length of time, but was terminable at will. Consequently, it could have been performed at any time after its inception, or terminated within the duration of a year at the will of either party. We have held that in such cases the statute does not apply. *Dent Lbr. & Shingle Co. v. Cedarhome Lbr. Co.,* 141 Wash. 593, 252 Pac. 141; *Barash v. Robinson,* 142 Wash. 118, 252 Pac. 680; *Peabody v. Pioneer Sand & Gravel Co.,* 164 Wash. 26, 2 P. (2d) 714; *von Herberg v. von Herberg,* 6 Wn. (2d) 100, 106 P. (2d) 737.

Finally, appellant contends that respondent suffered no loss. However, a reading of the evidence shows that respondent sustained damages by appellant's sale of Winthrop shoes to its competitor thereby causing a dimunition in price and by its refusal to furnish Winthrop shoes in compliance with the contract. Respondent not only was left without a sufficient supply to care for its customer's needs, but also was compelled to sell the few remaining odd-numbered shoes at a loss before it could secure a substitute brand within that price range.

A careful reading of the evidence convinces us that the trial court carefully weighed the evidence and cor-

rectly ascertained the damages suffered by respondent on account of the breach of the contract by appellant.

Finding no error, we affirm the judgment.

ROBINSON, C. J., BEALS, BLAKE, and JEFFERS, JJ., concur.

[1]Reported in 121 P. (2d) 394.