Schultheis, J., and Munson, J. Pro Tem., concur.

Review granted at 132 Wn.2d 1006 (1997).

[No. 15173-5-III.    Division Three.    February 20, 1997.]
Alfred G. French, *Appellant,* v. Sabey
Corporation, *Respondent.*

*William J. Powell* and *Powell & Morris, P.S.,* for appellant.

*Michael J. Hines* and *Lukins & Annis, P.S.,* for respondent.

SCHULTHEIS, J. — After the termination of his employment with Sabey Corporation, Alfred French sued Sabey for breach of an employment agreement and payment due on a remodeling project. The trial court granted Sabey's motion for partial summary judgment and dismissed the first claim, finding that the oral employment agreement was barred by the statute of frauds. Mr. French appeals, contending the statute of frauds is not applicable to this agreement. We affirm.

Mr. French was president and part owner of Lad Management Services, Inc. (providing management for

Northtown Mall in Spokane) and Pacific Maintenance Company (providing maintenance services for Northtown). In 1988, the owners of Northtown decided to sell the mall and began negotiations with several prospective buyers, including Sabey. Mr. French worked with David Sabey to prepare the winning proposal for the purchase, and Sabey Corporation purchased the mall in January 1989.

Along with the purchase of Northtown, Sabey also bought Lad Management and Pacific Maintenance. According to Mr. French, while negotiating the purchase of the companies with David Taylor, then vice-president and chief financial officer of Sabey, Mr. French was offered a position as vice-president of Sabey's retail division. In a meeting on October 17, 1988, the two men discussed the terms of Mr. French's employment. Mr. French wrote Mr. Taylor a letter on October 24, leading with the following paragraph:

> In follow up to our conversations relative to the consolidation of Lad Management Services, Inc. into the Sabey Corporation and the establishment of a retail real estate division within the Sabey Corporation, I would like to offer the following comments and proposal.

After discussing the benefits of including Lad Management and Pacific Maintenance—and their personnel—in the purchase of the mall, Mr. French's letter proposed in particular hiring of two current employees as well as himself. He referred to three attached exhibits as

> outlines for employment agreements for myself, Tom and Larry. Upon your acceptance of the proposals attached we shall enter into employment agreements and proceed to make the transfer of operations and the establishment of the operational entity desired.

The three "outlines" were identical, except that Mr. French's included a higher salary.

The relevant terms of the French employment agreement attached to the letter were as follows: (1) the term of

employment was for 5 years, beginning November 1, 1988; (2) the agreement could be terminated by either party with 6 months' written notice to the other party; (3) the terminated employee was entitled to 12 months of severance compensation; (4) salary of $10,000 per month; (5) the same medical and life insurance, disability, sick leave and vacation benefits as Sabey's other executive employees; and (6) costs for club memberships, professional organizations, conferences, professional license fees, automobile and car phone expenses and relocation from Spokane to Seattle. Mr. French contends Mr. Taylor agreed to the terms of employment in a meeting on October 24, 1988. Sabey, which never signed the employment proposals, disagrees.

Both parties agree that Mr. French began working for Sabey on November 1, 1988.[1] For 11 months, Mr. French managed Northtown and commuted between Seattle and Spokane, eventually leasing a condominium in Seattle as a second home. According to Mr. French, during this time Sabey honored every condition of the employment agreement. On October 6, 1989, a Sabey executive orally terminated Mr. French's employment as vice-president, but offered to employ him for six months as a consultant and independent contractor to perform architectural services at Northtown. Mr. French accepted the position at half his former salary and with no benefits. After a three-month written extension of this agreement, Mr. French was terminated in July 1990.

In the first claim of his suit against Sabey, Mr. French alleged breach of the employment agreement and sought recovery of the following sums: 6 months' notice of termination pay—$60,000; 12 months' severance pay—$120,000; relocation and housing expenses—$13,725;

---

[1] The parties do not dispute that they had an oral contract of employment.

automobile allowance—$6,500;[2] and compensation for medical insurance during the 6-month notice period—$1,500. The second claim alleged payment due for architectural services. Sabey answered, denying there was an enforceable employment agreement and asserting several counterclaims and affirmative defenses, including the statute of frauds. Sabey then moved for partial summary judgment on the employment agreement claim. After the trial court granted the motion and dismissed the first claim, Mr. French obtained an order making the partial summary judgment a final judgment and he appealed.

The principal question in this appeal is whether an oral employment contract may avoid the statute of frauds if the contract is terminable at will and has been partly performed. We hold that oral agreements for personal services may not be taken out of the statute of frauds under these circumstances.

■ We review an order granting summary judgment de novo, engaging in the same inquiry as the trial court. *Greaves v. Medical Imaging Sys., Inc.*, 124 Wn.2d 389, 392, 879 P.2d 276 (1994). Summary judgment must be affirmed if the facts and the inferences arising from them, viewed in the light most favorable to the nonmoving party, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

■ Neither party disputes that Mr. French and Sabey entered into an oral employment agreement. Generally, an oral contract for personal services that by its terms is not to be performed within a year must be in writing or it is barred by the statute of frauds.[3] RCW 19.36.010; *Dudley v. Boise Cascade Corp.*, 76 Wn.2d 466, 470, 457 P.2d 586

---

[2]The relocation and housing expenses and the auto allowance came out of the consultation period following the October 1989 termination and are not the subjects of this appeal.

[3]The Washington statute of frauds provides, in part, that:

"In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to

(1969). Since Mr. French's oral agreement is for a term of five years, it is barred by the statute of frauds unless it falls within one of the statute's exceptions. *Greaves*, 124 Wn.2d at 396.

Mr. French first argues that the statute does not apply to this contract because his employment was terminable at will. Either party could terminate the relationship at any time, he contends; therefore, the contract could have been performed within a year. This argument is without merit. If a contract has a fixed duration period, the fact that it is terminable at will does not take it out of the operation of the statute of frauds.[4] *Lectus, Inc. v. Rainier Nat'l Bank*, 97 Wn.2d 584, 589, 647 P.2d 1001 (1982); *Klinke v. Famous Recipe Fried Chicken, Inc.*, 24 Wn. App. 202, 207-08, 600 P.2d 1034 (1979), *aff'd*, 94 Wn.2d 255, 616 P.2d 644 (1980).

██ Next, Mr. French contends partial performance of an oral employment agreement places it outside the statute, citing *Miller v. McCamish*, 78 Wn.2d 821, 479 P.2d 919 (1971). But *Miller* simply stands for the rule, later followed in *Berg v. Ting*, 125 Wn.2d 544, 556, 886 P.2d 564 (1995), that part performance of an oral agreement to convey real property may fall outside the statute of frauds if certain conditions are met.[5] Washington courts have long recognized this clearly-defined exception to the statute of frauds for real property conveyances. *See Miller*, 78 Wn.2d at 826, and cases therein. No such exception exists for employment or other personal services contracts. *Union Sav. & Trust Co. v. Krumm*, 88 Wash. 20, 33, 152 P.

say: (1) Every agreement that by its terms is not to be performed in one year from the making thereof;" RCW 19.36.010.

[4]If an oral contract is for an *indefinite* period of time and is also terminable at will, however, it is not barred by the statute of frauds. *Purdy Mobile Homes, Inc. v. Champion Home Builders Co.*, 523 F. Supp. 56, 63 (E.D. Wash. 1981); *Sargent v. Drew-English, Inc.*, 12 Wn.2d 320, 328, 121 P.2d 373 (1942).

[5]The court must examine three factors to determine whether there has been sufficient part performance to take a real estate agreement out of the statute: (1) delivery and assumption of exclusive possession, (2) tender of consideration, and (3) the making of substantial and valuable improvements according to the contract. *Berg*, 125 Wn.2d at 556.

681 (1915); *Trethewey v. Bancroft-Whitney Co.*, 13 Wn. App. 353, 359-60, 534 P.2d 1382 (1975).

Mr. French cites *Brem-Rock, Inc. v. Warnack*, 28 Wn. App. 483, 491 n.12, 624 P.2d 220 (1981), which holds that on the basis of *Miller*, Division Two no longer adheres to the rule that part performance is not applicable to the statute of frauds. Citing *Miller*, *Brem-Rock* holds that part performance of an oral personal services agreement may support an action for money damages. 28 Wn. App. at 491-92.

We decline to follow *Brem-Rock*. The Washington Supreme Court in both *Miller* and *Berg* clearly confines the part-performance exception to real property conveyances. *See, e.g., Berg*, 125 Wn.2d at 555-57, and cases cited therein. Adopting the reasoning of 73 AM. JUR. 2D *Statute of Frauds* § 506 (1974), *Trethewey* offers the more appropriate rule: part performance of services under an oral contract does not remove the contract from the statute of frauds. 13 Wn. App. at 359-60. Washington courts will allow recovery for the work already performed in quantum meruit, valued according to the terms of the agreement, but there can be no recovery for breach. *Union Sav.*, 88 Wash. at 33-34; *Trethewey*, 13 Wn. App. at 359-60. *See also Stearns v. Emery-Waterhouse Co.*, 596 A.2d 72, 75 (Me. 1991) (rejects part performance as an avenue for avoidance of the statute of frauds in the employment context, but allows recovery for services actually performed in quantum meruit). While Mr. French does not seek damages for breach of the contract, he does seek to enforce provisions that do not represent services already performed for Sabey. Accordingly, he cannot recover under the notice and severance pay provisions.

■ Mr. French next argues that the employment provisions were smaller parts of a larger written contract to sell Lad Management and Pacific Maintenance. He cites only *Brem-Rock* for this contention, asserting that this court must consider the following factors to determine whether the lesser-included agreement was binding: (1)

Was a binding agreement intended, (2) was the agreement the result of extensive negotiations, and (3) did the parties' conduct result in the execution of the terms of the contract? *Brem-Rock*, 28 Wn. App. 488-89. The three-part *Brem-Rock* analysis, however, was used to determine whether the written requirements contract in that case was unconscionable; it was not applied to the discussion of the subsequent oral modification of that contract. Even if we accept Mr. French's assertion that the employment agreement was an integral part of the written contract, we note that other Washington cases have applied the statute of frauds to void oral agreements that were part of or arose from written contracts. *See, e.g., Lectus*, 97 Wn.2d 584; *Friedl v. Benson*, 25 Wn. App. 381, 609 P.2d 449 (1980).

Finally, Mr. French contends the notice and severance pay provisions are separate contracts, independently enforceable because they can be performed within one year. This argument must fail because first, nothing in the record shows that these provisions were separately negotiated or intended as separate agreements, and second, they have no meaning or effect outside the context of the employment agreement.

Affirmed.

SWEENEY, C.J., and KURTZ, J., concur.

Review granted at 132 Wn.2d 1006 (1997).