951 P.2d 260 (1998)
134 Wash.2d 547
Alfred G. FRENCH, Petitioner,
v.
SABEY CORPORATION, a Washington corporation, Respondent.
No. 65221-0.
Supreme Court of Washington, En Banc.
Argued January 31, 1998.
Decided February 26, 1998.
*261 Powell & Morris, William Powell, Rosanna Peterson, Spokane, for Petitioner.
Lukins & Annis, Michael Hines, Spokane, for Respondent.
TALMADGE, Justice.
We are asked to decide if the statute of frauds, RCW 19.36.010, requires a personal services contract of a set duration in excess of one year to be in writing if the contract is terminable on six months' notice or is partially performed. Neither partial performance nor the fact that a party may at its option terminate the contract within a year relieves the parties of the statutory obligation to put a personal services agreement in writing. The personal services contract here was void because it violated RCW 19.36.010. We affirm the trial court's summary judgment in favor of Sabey Corporation.

ISSUES
1. Is an oral contract for personal services of a fixed term in excess of one year subject to the statute of frauds if it is terminable at will within a year?
2. Is an oral contract for personal services subject to the statute of frauds if it has been partly performed?

FACTS
In 1988, Alfred French was the president and 25 percent owner of Lad Management Services, Inc. and Pacific Maintenance Company, which managed and served the Northtown Shopping Mall in Spokane. Dixon Investment Company (Dixon) owned 50 percent of each company and the Northtown Shopping Mall as well. Dixon requested French's assistance in selling the Mall. Ultimately, French helped arrange Dixon's sale of the Mall to Sabey Corporation (Sabey). As part of the sale, Sabey also bought Lad Management Services, Inc. and Pacific Maintenance Company.
To assure continuity in Mall operation, Sabey offered to hire French as vice president of Sabey's retail division. Negotiations between French and Sabey ensued. French claims Sabey agreed to the following terms of employment at a meeting on October 18, 1988:
1. Employment for a term of five years, with provision for renewal for an additional five years.
2. Termination at the option of either party on six months' written notice.
3. Severance compensation equal to 12 months' salary if Sabey terminated him.
4. Sabey would provide the same benefits available to other Sabey executive employees.
5. Sabey would provide club memberships, professional organization memberships, and other costs and benefits appropriate for an executive.
Clerk's Papers at 48. French had another meeting with Sabey's representative six days later, at which he presented written terms of *262 employment he himself had prepared in a letter dated October 24, 1988. The written terms encompassed the above-referenced terms, and were more detailed. However, the letter spoke in terms of being a proposal by French to Sabey, thereby requiring Sabey's subsequent acceptance:
I would like to make the following comments and proposal.
. . . .
Your proposal is that I head up the retail division with all retail operations being my responsibility.
. . . .
The final attachments, Exhibits "C," "D," and "E," are outlines for employment agreements for myself, Tom and Larry.[[1]] Upon your acceptance of the proposals attached we shall enter into the employment agreements and proceed to make the transfer of operations and the establishment of the operational entity desired.
Clerk's Papers at 41-42. French averred in an affidavit Sabey's representative orally agreed to the terms of employment French presented to him at this second meeting: "Mr. Taylor [Sabey's representative] agreed to the terms of employment of all three of us as outlined in my summaries." Clerk's Papers at 49. Sabey contends it never agreed to all of the terms of the October 24, 1988 letter, but it submitted no evidence controverting French's affidavit. No Sabey representative ever signed the terms of employment letter French had prepared, however.
French began working for Sabey on November 1, 1988. For the next 11 months he commuted between Spokane and Seattle. He subsequently relocated to Seattle. He testified Sabey complied with all the terms of employment in the October 24, 1988 letter. On October 9, 1989, without prior notice, Sabey terminated French's employment.
On October 7, 1992, French filed a complaint against Sabey, alleging that pursuant to the terms of his employment he was entitled to 6 months' notice before termination and therefore 6 months' contract, of additional pay ($60,000); 12 months' severance pay ($120,000); relocation and housing expenses ($13,725); automobile allowance ($6,500); compensation for medical insurance for 6 month notice period ($1,500); and prejudgment interest. Sabey answered, denying the existence of a contract with French.
Sabey moved for partial summary judgment on the basis of the statute of frauds. For purposes of summary judgment, the parties accepted the proposition the oral contract was for a term of five years, terminable by either party on six months' notice. The trial court granted the motion and subsequently certified its judgment as appealable under CR 54(b). The Court of Appeals affirmed the judgment, French v. Sabey Corp., 85 Wash.App. 164, 931 P.2d 204 (1997), and we granted review.

ANALYSIS
The statute of frauds provides, in pertinent part:
In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: (1) Every agreement by its terms is not to be performed in one year from the making thereof[.]
RCW 19.36.010. This portion of the statute has existed in its present form since 1881. As we noted in Dudley v. Boise Cascade Corp., 76 Wash.2d 466, 470, 457 P.2d 586 (1969):
The general rule, almost universally adhered to, is that a contract for personal services which by its terms is not to be performed within a year must be in writing. See Building Serv. Employees Int'l Union Lodge 6 v. Seattle Hosp. Council, 18 Wash.2d 186, 138 P.2d 891 (1943); Cope v. School Dist. 122, 149 Wash. 76, 270 P. 120 (1928); Union Sav. & Trust Co. of Seattle v. Krumm, 88 Wash. 20, 152 P. 681 (1915); 49 Am.Jur. Statute of Frauds § 52, at 410 (1943); 3 Williston, Contracts § 495, at 585 (3d ed.1960).
*263 Although Sabey does not deny the existence of an oral contract of employment or the documents French prepared setting forth French's version of the terms of his employment, Sabey argues, and both the trial court and Court of Appeals agreed, that any agreement between Sabey and French is void because Sabey never agreed to all of the terms of French's October 24, 1988 proposal and never signed any agreement. French makes two arguments in response. First, he asserts because his employment relationship was terminable at will, it qualifies as a contract for an indeterminate period, and is therefore not governed by the statute of frauds. Second, he asserts his part performance of the unsigned terms of employment takes his claim out of the statute.
A. Terminable Within a Year Exception to Statute of Frauds
French contends that RCW 19.36.010 does not apply to this oral employment contract because it could be performed within a year. Notwithstanding the five-year term of the alleged agreement, French argues the ability of one of the parties to terminate the agreement on six months' notice takes the agreement out of the statute of frauds, citing Sargent v. Drew-English, Inc., 12 Wash.2d 320, 328, 121 P.2d 373 (1942); von Herberg v. von Herberg, 6 Wash.2d 100, 106 P.2d 737 (1940); Peabody v. Pioneer Sand & Gravel Co., 164 Wash. 26, 2 P.2d 714 (1931); Barash v. Robinson, 142 Wash. 118, 252 P. 680 (1927). It is noteworthy that the agreements in each of these cases were of indefinite duration as well as being terminable at will. The putative agreement here was for a definite term of five years.
In numerous cases, Washington courts have held that a contractual provision allowing early termination of a contract of fixed duration exceeding a year, or the existence of a possible excuse to performance, does not take the agreement out of the statute of frauds. Dudley v. Boise Cascade Corp., 76 Wash.2d 466, 457 P.2d 586 (possible death, disability, or business discontinuation within year does not excuse performance); Lectus, Inc. v. Rainier Nat'l Bank, 97 Wash.2d 584, 647 P.2d 1001 (1982); Greaves v. Medical Imaging Systems, Inc., 124 Wash.2d 389, 879 P.2d 276 (1994) (five-year employment contract subject to termination for cause); Klinke v. Famous Recipe Fried Chicken, Inc., 24 Wash.App. 202, 600 P.2d 1034 (1979), aff'd, 94 Wash.2d 255, 616 P.2d 644 (1980). We adhere to the general rule expressed in Klinke:
"It is the general rule that the fact that either of the parties may have an option to put an end to a contract within a year does not take it out of the operation of the statute if, independent of the exercise of such a power, the agreement cannot be performed within a year. The fact that the contract may be terminated or further performance rendered impossible does not take it out of the statute. To be discharged from liability under a contract is not to perform it; when once the contract exceeds the year, the circumstance that it is defeasible will not make it other than a contract for more than a year. It cannot be said that the agreement would be fully performed by its termination under the option, but rather that in such an event, the performance of the agreement was frustrated. Of course, if no definite time for the duration of the contract is fixed and it may be terminated at will or by a certain notice, which will permit of its termination within a year, it is not within the statute."
(Footnotes omitted.) 72 Am.Jur.2d Statute of Frauds § 16, at 579-80 (1974). See also 3 S. Williston, [A Treatise on the Law of Contracts] § 498A [3d ed. W. Jaeger (1960) ]; contra, 2 A. Corbin, [Contracts] § 449 [(1950)].
Klinke, 24 Wash.App. at 208, 600 P.2d 1034 (emphasis added). As the alleged agreement here was for a fixed duration of five years, that either party could terminate it on six months' notice did not remove it from the statute of frauds.
B. Part Performance of an Oral Personal Services Contract
There is no law anywhere to support the proposition that the statute of frauds does not apply when there has been partial performance of a personal services contract. French candidly admitted as much in a letter *264 to the trial judge in response to the court's request for additional briefing specifically addressing the issue:
My research on this issue has, I am unhappy to report, been negative in that the great weight of authority of cases from other states appears to hold that the doctrine of part performance does not apply to personal services contracts to as to take such contracts out of the statute of frauds where the contract extends for more than one year. These cases are assembled in 6 A.L.R.2d 1053.
Clerk's Papers at 115. French is correct. We first announced the rule in Union Sav. & Trust Co. v. Krumm, 88 Wash. 20, 33, 152 P. 681 (1915): "In the nature of the case, where the statute is directed solely to the time of performance and not to the character or subject-matter of the contract, part performance could not remove the ban of the statute without in effect repealing the statute." Similarly, in Trethewey v. Bancroft-Whitney Co., 13 Wash.App. 353, 534 P.2d 1382 (1975), a case involving an oral agreement by one of the defendant's sales staff perpetually to maintain the plaintiff law firm's law library, the Court of Appeals reiterated this rule and found the oral agreement void under RCW 19.36.010. The Court of Appeals there noted the general rule regarding part performance of personal services contracts:
The rule may be generally stated that the part performance of services under an oral contract not to be performed within a year does not remove the contract from the operation of the statute of frauds, with the result that an action may not be maintained for the breach of the entire contract.
Trethewey, 13 Wash.App. at 359, 534 P.2d 1382 (quoting W.R. Habeeb, Annotation, Performance as Taking Contract Not To Be Performed Within a Year Out of the Statute of Frauds, 6 A.L.R.2d 1053, at 1083 (1949)). French now points to Miller v. McCamish, 78 Wash.2d 821, 479 P.2d 919 (1971), for succor. He asserts Miller "concluded that part performance will remove an oral contract from the statute of frauds." Br. of Appellant at 12. Because Miller is a real estate case, rather than a personal services contract case, it does not support his position.[2]
McCamish hired Miller to run McCamish's farm. Miller was to move onto the farm and live there rent-free. McCamish was to pay him $6,000 yearly, but retain $3,000 of that amount to be applied to the purchase price of the farm should Miller wish to buy it at some future time. In the event Miller actually purchased the farm, he would receive as a credit against the purchase price one-third of the farm's increased value over $40,000. This provision gave Miller incentive to improve the farm's productivity, and not just live on it as a tenant. McCamish and Miller never reduced their agreement to writing. McCamish and Miller had a falling out two years later. McCamish sold the farm to a third party after rejecting Miller's offer to purchase it.
Miller sued McCamish. Among the claims Miller made at trial was a claim for damages representing one-third of the farm's increased value. The trial court awarded him $8,948.27 on that claim. The Court of Appeals reversed. Miller v. McCamish, 2 Wash.App. 111, 466 P.2d 857 (1970). According to the Court of Appeals, the sole issue before it was "whether a contract, within the statute of frauds and exempted therefrom by part performance, may serve as a basis for an action at law for money damages." Id. at 112, 466 P.2d 857. The court engaged in no discussion of how it reached the conclusion the contract at issue was within the statute of frauds, or how part performance exempted it from the reach of the statute. The court nevertheless concluded Miller was not entitled to damages for breach of contract, basing its conclusion on the equitable nature of the application of part performance to blunt the effect of the statute of frauds, and deciding equitable considerations would not apply to an action at law. Id. at 113, 466 P.2d 857. An important observation of the court was that it would not consider Miller's argument, raised for the first time on appeal, that he was seeking reasonable compensation for his *265 services. The Court of Appeals thus did not treat the case as one dealing with part performance of a personal services contract. Id. at 114, 466 P.2d 857.
We reversed. We considered the single issue on review to be the same issue the Court of Appeals addressed: "whether a contract, within the statute of frauds and exempted therefrom by part performance, may serve as a basis for an action at law for money damages." Miller, 78 Wash.2d at 824, 479 P.2d 919 (emphasis omitted). Like the Court of Appeals, we did not discuss why the statute of frauds and the part performance doctrine applied, but it is clear Miller did not involve a personal services contract.[3]
The only point in the contract fixing a time is the three-year period that had to elapse before Miller could exercise his option to buy McCamish's farm. Thus, the result in Miller can best be explained by reference to the well-settled line of cases holding oral contracts for the sale or lease of real property may be taken out of the statute of frauds by sufficient part performance, which the Miller decision cites. Miller, 78 Wash.2d at 826, 479 P.2d 919. Miller is plainly not a personal services case, and supplies no authority for French's argument here.
French relies also on Brem-Rock, Inc. v. Warnack, 28 Wash.App. 483, 624 P.2d 220 (1981). That case involved an alleged requirements contract, and had nothing to do with personal services. However, the Court of Appeals stated in dicta in a footnote, "we view the thrust of Miller ... as authority for the proposition that this jurisdiction no longer adheres to the rule that part performance is not applicable to the `not to be performed in one year' provision of the statute of frauds." Brem-Rock, 28 Wash.App. at 491 n. 12, 624 P.2d 220. We now specifically disapprove this footnote and adhere to the general rule we aptly articulated in Union Savings & Trust and Trethewey.
Recently, we spoke on the precise issue at bar. In Greaves v. Medical Imaging Systems, Inc., 124 Wash.2d 389, 879 P.2d 276, Medical Imaging offered Greaves a five-year employment contract. Greaves accepted, but the agreement was never reduced to writing. Greaves left his current position in reliance on the oral contract and joined Medical Imaging, but when Medical Imaging lost a contract with a hospital, it terminated Greaves after only seven months.
The question before us in Greaves was the adoption of RESTATEMENT (SECOND) OF CONTRACTS § 139, an equitable estoppel argument that would have avoided the statute of frauds. In the course of deciding not to adopt § 139, we discussed the statute of frauds, noting that "`[t]he general rule, almost universally adhered to, is that a contract for personal services which by its terms is not to be performed within a year must be in writing.'" Greaves, 124 Wash.2d at 396, 879 P.2d 276 (citing four Washington cases, 49 AM. JUR. Statute of Frauds, and Samuel Williston on Contracts) (quoting Dudley, 76 Wash.2d at 470, 457 P.2d 586). Greaves also quoted Miller at length, so it is clear we found nothing to the contrary in Miller. Equitable estoppel by partial performance of one party did not avoid the mandate of RCW 19.36.010 that contracts for personal services be in writing. We adhere to this rule.

CONCLUSION
RCW 19.36.010 applies to this oral agreement of five years' duration even though the parties could terminate it on six months' notice. Moreover, French cannot elude the long-standing rule that part performance of a personal services contract does not avoid the mandate of RCW 19.36.010. We affirm the Court of Appeals decision.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, ALEXANDER and SANDERS, JJ., concur.
NOTES
[1] French had prepared employment agreements for two of his associates whom Sabey also hired.
[2] As we noted in Miller, 78 Wash.2d at 826, 479 P.2d 919, part performance of an oral contract to convey real estate is a well-recognized exception to the statute of frauds.
[3] Even if Miller had involved a personal services contract, it still would not be within the statute of frauds because the personal services aspect of the alleged contract was for an indeterminate amount of time, i.e., it could have been performed within one year, or could have lasted forever.